No. 14-1251

———————————————————

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

RICHMOND, VIRGINIA

———————————————————

MCELROY COAL COMPANY,

*Petitioner,*

v.

DONN L. WNEK,

*Respondent,*

and

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Party-In-Interest.*

———————————————————————————————————

ON PETITION FOR REVIEW OF A DECISION AND ORDER
OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR

———————————————————————————————————

OPENING BRIEF OF PETITIONER,
McELROY COAL COMPANY
PUBLIC REDACTED VERSION

———————————————————————————————————

Jeffrey R. Soukup
Jackson Kelly PLLC
175 E. Main Street, Suite 500
Lexington, KY  40507
(859) 288-2826
*Counsel for McElroy Coal Company*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. 14-1251            Caption:  McElroy Coal Company v. Donn L. Wnek

Pursuant to FRAP 26.1 and Local Rule 26.1,

McElroy Coal Company who is Petitioner, makes the following disclosure:

1.      Is party/amicus a publicly held corporation or other publicly held entity?

        YES            X    NO

2.      Does party/amicus have any parent corporations?

          X    YES            NO

Last year, the company previously known as McElroy Coal Company was sold and
is now Ohio County Coal Company, a wholly owned subsidiary of Murray
American Energy, Inc., a privately held corporation.

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held
        corporation or other publicly held entity?

        YES            X    NO

4.      Is there any other publicly held corporation or other publicly held entity that
        has a direct financial interest in the outcome of the litigation (Local Rule
        26.1(b))?

        YES            X    NO

5.      Is party a trade association? (amici curiae do not complete this question)

        YES            X    NO

6.      Does this case arise out of a bankruptcy proceeding?

        YES            X    NO

/s/ Jeffrey R. Soukup                         May 14, 2014
*Counsel for McElroy Coal Company*

i

## TABLE OF CONTENTS

I.     STATEMENT OF SUBJECT MATTER AND.............................................1

II.    STATEMENT OF THE ISSUES .................................................................2

        1.    Drs. Fino and Rosenberg diagnose no legal pneumoconiosis based on reasoning that is consistent with the preamble and the applicable black lung regulations. Dr. Rosenberg also relied on medical studies published after the preamble was issued. Were the reasons given to discredit the medical opinions of Dr. Fino and Dr. Rosenberg irrational, unsupported by substantial evidence, and contrary to law? ...............................2

        2.    In *Usery*, the Supreme Court held the BLBA does not limit the evidence with which an operator may rebut the 15-year presumption. Has the agency erred by imposing the limited rebuttal methods applicable to the Secretary on operators? ..................................2

        3.    The agency required the operator to rule out any contribution to disability by pneumoconiosis to rebut the 15-year presumption. Does the rule-out standard for rebutting the 15-year presumption of total disability due to pneumoconiosis apply to operators? ..................................................2

        4.    Are regulations that impose the Secretary's limits for rebutting the 15-year presumption on operators invalid? ..................................................2

III.   STATEMENT OF THE CASE ...................................................................3

      A.    Procedural History ........................................................... 3

      B.    Relevant Facts.................................................................. 4

IV.   SUMMARY OF ARGUMENT .................................................................8

V.    ARGUMENT ...........................................................................................10

**TABLE OF CONTENTS, Continued.**

A.   STANDARD OF REVIEW ............................................................. 10

B.   DISCUSSION OF ISSUES ............................................................ 11

   1.   ALJ Lesniak's belief that the opinions of Drs. Fino and Rosenberg are contrary to the preamble and/or the regulations is irrational, unsupported by substantial evidence, and contrary to law. .............................11

      a.   The agency relied on invalid reasoning to discredit Dr. David M. Rosenberg's opinion, and improperly refused to consider Dr. Rosenberg's reliance on medical studies post-dating the preamble. ..............................................11

         i.   Dr. Rosenberg's opinion is not contrary to the preamble. ..............................................13

         ii.  Dr. Rosenberg did not err when he relied on literature published after the preamble was issued. ...................................................16

      b.   The agency relied on invalid reasoning to discredit Dr. Gregory J. Fino's opinion. ........................21

   2.   The statute's language and Supreme Court precedent confirm operators are not limited to 30 U.S.C. § 921(c)(4)'s methods of rebuttal. ...........................30

   3.   The rule-out standard for rebutting the 15-year presumption of total disability due to pneumoconiosis should not apply to operators. .......................38

      a.   The rule-out standard arises from the language limiting rebuttal in § 921(c)(4). ......................38

      b.   *Rose* should be limited or overruled to preclude applying the rule-out standard to operators' burden of rebuttal. ........................................46

   4.   Regulations that impose limits for rebutting the 15-year presumption on operators are invalid. ..............................52

VI.  CONCLUSION ........................................................................59

iii

## TABLE OF CONTENTS, Continued.

VII.   REQUEST FOR ORAL ARGUMENT .........................................................60

VIII.  ADDENDUM OF STATUTES, RULES, and REGULATIONS ................61

IX.    ADDENDUM OF UNPUBLISHED CASES ..............................................73

X.     CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

XI.    CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*A&E Coal Co. v. Adams*,
    694 F.3d 798 (6th Cir. 2012) .......................................................................14

*Amax Coal Co. v. Beasley*,
    957 F.2d 324 (7th Cir. 1992).........................................................43, 44, 45

*Andersen v. Director, OWCP*,
    455 F.3d 1102 (10th Cir. 2006)..................................................................11

*Bernardi v. McElroy Coal Co.*,
    2008-BLA-05557 (OALJ Aug. 31, 2011) ..................................................23

*Blakely v. Amax Coal Co.*,
    54 F.3d 1313 (7th Cir. 1995).................................................................44, 45

*Chevron U.S.A., Inc. v. Nat'l Res. Defense Council, Inc.*,
    467 U.S. 837 (1984)..............................................................................56, 58

*Clinchfield Coal Co. v. Fleming*,
    606 F.2d 441 (4th Cir. 1979).................................................................51, 52

*Colony, Inc. v. Comm'r*,
    357 U.S. 28 (1958)......................................................................................56

*Consol. Edison Co. of N.Y. v. NLRB*,
    305 U.S. 197 (1938)....................................................................................10

*Consolidation Coal Co. v. Swiger*,
    98 F. App'x 227 (4th Cir. 2004).................................................................42

*Cooper v. MRM Inv. Co.*,
    367 F.3d 493 (6th Cir. 2004)......................................................................50

*Dehue Coal Co. v. Ballard*,
    65 F.3d 1189 (4th Cir. 1995)......................................................................10

*Director, OWCP v. Greenwich Collieries*,
    512 U.S. 267 (1994)....................................................................................42

*Freeman v. R&F Coal Co.*,
    2007-BLA-5958 (OALJ Jan. 2, 2013)........................................................23

*Gunderson v. U.S. Dept. of Labor*,
    601 F.3d 1013 (10th Cir. 2010)..................................................................24

*Harman Mining Co. v. Director*, OWCP,
    678 F.3d 305 (4th Cir. 2012)........................................................... 8, 14, 17

*Helvering v. Hallock*,
    309 U.S. 106 (1940)....................................................................................48

*Hobbs v. Clinchfield Coal Co.*,
    45 F.3d 819 (4th Cir. 1995) .......................................................................12

*Home Concrete & Supply, LLC v. United States*,
    634 F.3d 249 (4th Cir. 2011)......................................................................58

*Island Creek Coal Co. v. Compton*,
    211 F.3d 203 (4th Cir. 2000)......................................................................10

*Jacobs v. Nat'l Drug Intelligence Ctr.*,
    548 F.3d 375 (5th Cir. 2008)......................................................................50

*Kopp b. Director, OWCP*,
    877 F.2d 307 (4th Cir. 1989).......................................................................3

*Lane Hollow Coal Co. v. Director, OWCP*,
    137 F.3d 799 (4th Cir. 1998)......................................................................24

*McMellon v. United States*,
    387 F.3d 329 (4th Cir. 2004) (*en banc*).....................................................48

*Milburn Colliery Co. v. Hicks*,
    138 F.3d 524 (4th Cir. 1998)......................................................................10

vi

*Mingo Logan Coal Co. v. Owens*,
  724 F.3d 550 (4th Cir. 2013)................................................ 34, 35, 36, 37, 54

*Nat'l Cable and Telecomms. Ass'n v. Brand X Internet Servs.*,
  545 U.S. 967 (2005).......................................................54, 56, 57

*Nat'l Mining Ass'n v. Dep't of Labor*,
  292 F.3d 849 (D.C. Cir. 2002) ..................................................11

*Owens v. Mingo Logan Coal Co.*,
  25 BLR 1-1 (Juris.) (Ben Rev. Bd. 2011)................................................4, 31

*Pittston Co. v. United States*,
  199 F.3d 694 (4th Cir. 1999)....................................................47

*Rose v. Clinchfield Coal Co.*,
  614 F.2d 936 (4th Cir. 1980)................................................*passim*

*R.S. v. Director, OWCP*,
  2005-BLA-6014 (OALJ May 11, 2007)................................................23, 24

*Sexton v. Buck Creek Coal Co.*,
  BRB Nos. 10-0191 and 10-0192 BLA
  (Ben Rev. Bd. Feb. 11, 2011)................................................ 22, 24, 27, 28

*Spese v. Peabody Coal Co.*,
  19 Black Lung Rep. (Juris) 1-47 (Ben. Rev. Bd. 1995).........................24, 54

*Sterling Smokeless Coal Co. v. Akers*,
  131 F.3d 438 (4th Cir. 1997)....................................................10

*Talley v. Mathews*,
  550 F.2d 911 (4th Cir. 1977)................................................ 41, 46, 50, 51

*United States v. King*,
  276 F.3d 109 (2d Cir. 2002).....................................................50

*United States v. Home Concrete & Supply*, LLC,
  132 S. Ct. 1836 (2012)...............................................55

vii

*Usery v. Turner Elkhorn Mining, Inc.*,
    428 U.S. 1 (1976).................................................................*passim*

*Westmoreland Coal Co. v. Cochran*,
    718 F.3d 319 (4th Cir. 2013)....................................................19


## **Statutes**

Administrative Procedure Act
    5 U.S.C. § 557(c)(A)...........................................................18, 20

Black Lung Benefits Act
    30 U.S.C. § 901–45............................................................3, 43
    30 U.S.C. § 921(c) ..................................................................1
    30 U.S.C. § 921(c)(4)........................................................*passim*
    30 U.S.C. § 923(b) ...........................................................18, 20
    30 U.S.C. § 932(a) ..................................................................1

Longshore and Harbor Workers' Compensation Act
    33 U.S.C. § 921(c) ..................................................................1

Patient Protection and Affordable Care Act
    65 Fed. Reg. 79,920 .........................................................12, 13
    65 Fed. Reg. 79,923 ...............................................................11
    65 Fed. Reg. 79,940 ...............................................................14
    65 Fed. Reg. 79,941 ...............................................22, 24, 25, 29
    65 Fed. Reg. 79,942 ...............................................................29
    65 Fed. Reg. 79,943 ...............................................................14


## **Regulations**

Part 410: Total Disability or Death Due to Pneumoconiosis
    20 C.F.R. § 410.412.................................................................49

Part 718: Standards for Determining Coal Miner's Total Disability or Death Due to Pneumoconiosis
    20 C.F.R. § 718.202(a)(4) (2000)............................................27
    20 C.F.R. § 718.204 (2013).....................................................49

viii

20 C.F.R. § 718.204(c) (2013) ................................................................46
20 C.F.R. § 718.204(c)(1) (2013)......................................................42, 46
20 C.F.R. § 718.305 (2000)....................................................................52
20 C.F.R. § 718.305 (2013).......................................................3, 53, 55
20 C.F.R. § 718.305(a) (2000) ........................................................52, 58
20 C.F.R. § 718.305(d) (2000) ........................................................52, 58
20 C.F.R. § 718.305(d)(1) (2013) ..........................................................53
20 C.F.R. § 718.305(d)(3) (2013). .........................................................53

Part 725: Claims for Benefits Under Part C of Title IV of the Federal Coal Mine Safety and Health Act, as Amended

20 C.F.R. § 725.482(a)...................................................................1

## Other Legislative & Regulatory History

Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended

65 Fed. Reg. 79,920 (Dec. 20, 2000).........................................................12
65 Fed. Reg. 79,923 (Dec. 20, 2000).........................................................11
65 Fed. Reg. 79,940 (Dec. 20, 2000).........................................................14
65 Fed. Reg. 79,941 (Dec. 20, 2000)................................... 14, 22, 24, 25, 29
65 Fed. Reg. 79,942 (Dec. 20, 2000).........................................................29
65 Fed. Reg. 79,943 (Dec. 20, 2000).........................................................14

Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits

78 Fed. Reg. 59,102 (Sept. 25, 2013)...................................................34, 53

## I.    STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This matter involves an appeal from a final order of the United States Department of Labor Benefits Review Board ("Board").  This Court has jurisdiction over an appeal from a final order of the Board under Section 21(c) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 921(c), as incorporated by § 422(a) of the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 932(a).  The Board affirmed the January 28, 2013 award of federal black lung benefits to the benefits claimant Donn L. Wnek by United States Department of Labor ("DOL") Administrative Law Judge ("ALJ") Michael P. Lesniak.  Joint Appendix ("JA") 53.

The jurisdictional time limit for filing an appeal from a final order of the Board is 60 days.  *See* 33 U.S.C. § 921(c); 20 C.F.R. § 725.482(a).  The Board issued its final order affirming an award of benefits to Mr. Wnek on January 14, 2014.  McElroy Coal Company filed its appeal with this Court on March 12, 2014.  JA 61.  The injury alleged, within the meaning of Section 21(c) of the LHWCA, occurred in West Virginia.  This Court has jurisdiction to review the Board's decision.

1

## II.   STATEMENT OF THE ISSUES

1.   **Drs. Fino and Rosenberg diagnose no legal pneumoconiosis based on reasoning that is consistent with the preamble and the applicable black lung regulations.  Dr. Rosenberg also relied on medical studies published after the preamble was issued.  Were the reasons given to discredit the medical opinions of Dr. Fino and Dr. Rosenberg irrational, unsupported by substantial evidence, and contrary to law?**

2.   **In *Usery*, the Supreme Court held the BLBA does not limit the evidence with which an operator may rebut the 15-year presumption.  Has the agency erred by imposing the limited rebuttal methods applicable to the Secretary on operators?**

3.   **The agency required the operator to rule out any contribution to disability by pneumoconiosis to rebut the 15-year presumption.  Does the rule-out standard for rebutting the 15-year presumption of total disability due to pneumoconiosis apply to operators?**

4.   **Are regulations that impose the Secretary's limits for rebutting the 15-year presumption on operators invalid?**

### III.    STATEMENT OF THE CASE

**A.    Procedural History**

This matter concerns a claim for disability benefits filed by Donn L. Wnek, a retired coal miner, on August 4, 2010, under the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1977. 30 U.S.C. § 901–45 ("BLBA").  JA 1.  Mr. Wnek claims to be totally disabled because of coal mine dust-induced lung disease.  Mr. Wnek last worked as a coal miner for McElroy in West Virginia in 2005.[1]  JA 21.

ALJ Michael P. Lesniak convened a formal hearing in Weirton, West Virginia, and issued a Decision and Order Awarding Benefits on January 28, 2013. JA 35.  ALJ Lesniak determined that the 15-year presumption of total disability due to pneumoconiosis, found at 30 U.S.C. § 921(c)(4) and 20 C.F.R. § 718.305, applied, and transferred the burden of proof to McElroy to show that pneumoconiosis was absent or that disability was not due to pneumoconiosis. JA 47.  The opinions of Drs. Fino and Rosenberg were found contrary to the black lung regulations and the regulatory preamble, and McElroy failed to rebut the 15-year presumption.  JA 49–51.

---

[1]    Since Mr. Wnek's last coal mine employment took place in West Virginia, the law of the United States Court of Appeals for the Fourth Circuit applies to this case.  *See Kopp v. Director, OWCP*, 877 F.2d 307, 308 (4th Cir. 1989).

Aggrieved by the agency's decision, McElroy appealed to the Board.  The

Board affirmed the benefits award on January 14, 2014.  JA 53.  The Board

rejected McElroy's challenge to the rebuttal-method limitations for the reasons

given in *Owens v. Mingo Logan Coal Co.*, 25 Black Lung Rep. 1-1, 1-4–5 (Juris.)

(Ben Rev. Bd. 2011), and held the ALJ correctly held McElroy to the "rule out"

standard of rebuttal.  JA 56–57.  The Board affirmed the ALJ's finding McElroy

did not rebut the 15-year presumption.  JA 57–59.  The Board upheld the ALJ's

finding that Dr. Fino's reasoning for ruling out coal mine dust as a cause of

Mr. Wnek's impairment was contrary to the black lung regulations and the

preamble.  JA 57–58.  The Board also upheld the ALJ's finding that

Dr. Rosenberg's reasoning for ruling out coal mine dust as a cause of Mr. Wnek's

impairment was contrary to the preamble.  JA 58.  Although Dr. Rosenberg relied

on recent medical literature to support his reasoning, the Board held this "did not

require the [ALJ] to conclude that advancements in science have negated the

medical literature addressing the effects of coal mine dust exposure on the lungs,

that was endorsed by the DOL in the preamble."  *Id.*

McElroy timely appealed to this Court on March 12, 2014.

**B.    Relevant Facts**

Donn L. Wnek, a retired coal miner, was found to have 33 years of coal

mine employment.  JA 46.  Mr. Wnek last worked as a coal miner in 2005 for

4

McElroy, stopping because he underwent quintuple heart bypass surgery.  JA 1.

His coal mine employment took place in West Virginia.  JA 50.

      Mr. Wnek smoked cigarettes for many years.  He smoked approximately one

package of cigarettes per day from 1961 to 2005, or 44 years.  JA 26–27.



JA 66, 78, 83, 125, 137.

      The crux of the controversy to resolve was the cause of Mr. Wnek's totally

disabling respiratory or pulmonary impairment.  Dr. Melvin Saludes, Mr. Wnek's

treating physician; Dr. Paul Knight, the OWCP's examining physician; and

Dr. John Schaaf, who examined Mr. Wnek at his request, believed Mr. Wnek

totally disabled due to chronic obstructive pulmonary disease ("COPD") caused

both by Mr. Wnek's years of coal mine dust exposure and his approximately

thirty-five pack-years of cigarette smoking.  Drs. David M. Rosenberg and

Gregory J. Fino agreed Mr. Wnek was disabled but assessed coal mine dust did not

significantly contribute to Mr. Wnek's disabling impairment.

5



JA 81.

JA 83, 87.

JA 136, 199, 232.

JA 145, 149.

JA 149.

JA 77, 95.

JA 80, 115–16.

JA 80.

 JA 67, 127, 172–73, 259–62.

## IV.    SUMMARY OF ARGUMENT

McElroy Coal Company has been ordered by the agency to pay lifetime disability benefits to its former employee, Donn L. Wnek, and in the future to his survivors, based on an ALJ's determination that he is totally disabled by a chronic coal mine dust–induced lung disease.  Mr. Wnek retired from coal mine work after experiencing a heart attack that required bypass surgery.  He has been a long-time cigarette smoker and all the physicians agree he is afflicted with a totally disabling lung disease.  The controversy presented here is a familiar one in black lung benefits cases: was the disease caused by cigarette smoking or did occupational exposure to coal mine dust contribute in a significant fashion to the impairment?  The agency's fact-finder found the medical opinions attributing disability exclusively to smoking were contrary to the regulatory scheme and summarily dismissed the opinions.

The agency decision fails to set forth a proper basis for rejecting Dr. Rosenberg's and Dr. Fino's medical opinions.  While the preamble may be used to examine and discredit an expert opinion where the opinion conflicts with the preamble's findings, *see Harman Mining Co. v. Director, OWCP*, 678 F.3d 305, 312 (4th Cir. 2012), where there is no conflict there can be no discrediting.  Similarly, while the preamble may be accepted as the "official" or "orthodox" view of pulmonary science as of its publication in 2001, scientific knowledge has

8

expanded since then. For that reason, an expert opinion that relies on medical studies more recent than the preamble cannot automatically be rejected as "contrary" to the preamble's view of science. Because the decision below improperly discredits McElroy's expert medical opinions in just such a fashion, the decision should be vacated and remanded so the agency can assess the conflicting evidence and resolve the material issues of fact, as it must in all other adjudications.

A second legal issue presented by this appeal is also presented in several other cases pending before this Court: may the agency by regulation limit an operator's means of rebutting the 15-year presumption, as well as the standard of proof for rebutting the presumption, contrary to the statute and Supreme Court precedent? The plain language of 30 U.S.C. § 921(c)(4) and *Usery v. Turner Elkhorn Mining, Inc.*, 428 U.S. 1 (1976), confirm that operators may not be so limited in rebutting the 15-year presumption.

9

## V.    ARGUMENT

### A.    STANDARD OF REVIEW

In reviewing claims for benefits under the BLBA, this Court determines whether substantial evidence supports the findings of fact and conclusions of law issued by the ALJ.  *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938); *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998).  In determining whether substantial evidence supports the ALJ's factual determination, the Court should address whether all relevant evidence has been analyzed and whether the ALJ has sufficiently explained the rationale used in crediting certain evidence.  *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997).

The ALJ's and Board's conclusions of law are reviewed *de novo* to determine if they are rational and consistent with the law.  *See Ballard*, 65 F.3d at 1193; *see also Island Creek Coal Co. v. Compton*, 211 F.3d 203, 207–08 (4th Cir. 2000).

10

**B.    DISCUSSION OF ISSUES**

**1.    ALJ Lesniak's belief that the opinions of Drs. Fino and Rosenberg are contrary to the preamble and/or the regulations is irrational, unsupported by substantial evidence, and contrary to law.**

Assuming *arguendo* ALJ Lesniak properly restricted McElroy to 30 U.S.C.

§ 921(c)(4)'s two limited methods of rebutting the 15-year presumption and

properly applied the "rule-out" rebuttal standard, he erred in concluding McElroy's

rebuttal evidence—the opinions of Dr. Rosenberg and Dr. Fino—to be contrary to

the black lung regulations and/or the regulatory preamble and thus legally

insufficient to rebut the 15-year presumption.

**a.    The agency relied on invalid reasoning to discredit Dr. David M. Rosenberg's opinion, and improperly refused to consider Dr. Rosenberg's reliance on medical studies post-dating the preamble.**

While coal mine dust exposure can cause disabling airflow obstruction, or

COPD, just because a miner has airflow obstruction does not necessarily mean the

miner has legal coal workers' pneumoconiosis.  *See Andersen v. Director, OWCP*,

455 F.3d 1102, 1105 (10th Cir. 2006); *Nat'l Mining Ass'n v. Dep't of Labor*,

292 F.3d 849, 862–63 (D.C. Cir. 2002); *see also* 65 Fed. Reg. 79,923

(Dec. 20, 2000) ("The Department attempts to clarify that not all obstructive lung

disease is pneumoconiosis.  It remains the claimant's burden of persuasion to

demonstrate that his obstructive lung disease arose out of his coal mine

employment and therefore falls within the statutory definition of

11

pneumoconiosis.").  To ascertain whether an airways disease represents legal

pneumoconiosis or obstruction caused by other factors, one must address the

specific characteristics of the disease.



*See* JA 87.

JA 85.

*See id.*

_____

[2]    The FVC is the total air able to be forcefully inhaled in a ventilatory study. *See Hobbs v. Clinchfield Coal Co.*, 45 F.3d 819, 822 n.5 (4th Cir. 1995).

[3]    The $FEV_1$ is the total air able to be forcefully exhaled in one second.  *See Hobbs*, 45 F.3d at 822 n.5.

███████████████████████████████████████████

██ ████████████████████████████████████    *See id.*

### i.   Dr. Rosenberg's opinion is not contrary to the preamble.

The ALJ declined to credit Dr. Rosenberg's opinion for the sole reason that

the opinion was allegedly inconsistent with the preamble's findings:

> In contrast, Dr. Rosenberg did not find the miner to suffer from legal
> pneumoconiosis. Specifically, Dr. Rosenberg noted that the miner's
> FEV1/FVC ratio was decreased, a pattern he found to be inconsistent
> with legal pneumoconiosis. This opinion is inconsistent with the
> preamble to the Regulations, which recognizes "that coal dust can
> cause clinically significant obstructive disease in the absence of
> clinical pneumoconiosis, as shown by a reduced FEV1/FVC ratio."
> Therefore, I give this opinion little weight.

JA 49 (citations omitted).

The Board affirmed the ALJ's finding of fact and conclusions of law,

stating:

> In assessing the credibility of Dr. Rosenberg's opinion, the
> administrative law judge accurately noted that the physician
> eliminated coal mine dust exposure as a source of claimant's COPD,
> in part, because claimant had a ""markedly reduced FEV1 with an
> associated severe reduction of his FEV1/FVC ratio," which
> Dr. Rosenberg explained is characteristic of cigarette smoke-induced
> lung disease, but not of lung disease caused by coal mine dust
> exposure. The administrative law judge permissibly discounted
> Dr. Rosenberg's opinion, noting that medical science endorsed by
> DOL recognizes that coal mine dust can cause clinically significant
> obstructive disease, as shown by a reduction in the FEV1/FVC ratio.

JA 58 (citations omitted).

The agency's finding is arbitrary and capricious and is based on a faulty generalization. An agency fact-finder may as a valid exercise of discretion consult the regulatory preamble as a means of determining the credibility of expert medical opinions. *See A&E Coal Co. v. Adams*, 694 F.3d 798, 802 (6th Cir. 2012); *Harman Mining Co.*, 678 F.3d at 312. What the fact-finder may not do is to misconstrue the preamble's findings to find "inconsistency" between the principles in the preamble and a medical opinion when there is none.

Dr. Rosenberg's opinion is entirely consistent with the preamble. The preamble, in relevant part, states: "In addition to the risk of simple CWP and PMF, epidemiological studies have shown that coal miners have an increased risk of developing COPD. COPD may be detected from decrements in certain measurements of lung function, especially the $FEV_1$ and the ratio of FEV1/FVC." 65 Fed. Reg. 79,943 (Dec. 20, 2000). ████████████████████

████████████████████████████████████ ████████████

████ JA 85. ████████████ ██████████████████████

██████████████████████████████ *Id.* ████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████ ████ *See, e.g.*, 65 Fed. Reg. 79,940 (citing Attfield,

14

MD and Houdos, TK, *Pulmonary function of U.S. coal miners related to dust exposure estimates*, AM. REV. RESPIR. DIS. 145: 605–09 (1992)); *id.* at 79938–39 (citing Morgan, WKC and Anthony Seaton, OCCUPATIONAL LUNG DISEASES 391 (3d ed. 1995)).



JA 87.  The obstructive pattern is inconsistent with coal mine dust-induced airways disease but classic for smoking-induced COPD.

JA 85.

JA 85–86.

JA 86.



*Id.*  As Dr. Rosenberg voices no opinion at odds with the preamble, ALJ Lesniak's discrediting of Dr. Rosenberg as contrary to the preamble cannot withstand scrutiny as it is inconsistent with law and this record.

###### ii.    Dr. Rosenberg did not err when he relied on literature published after the preamble was issued.

In discrediting Dr. Rosenberg's opinion, the ALJ avoided resolving Dr. Rosenberg's explanation that medical studies and literature published after the 2000 regulatory changes showed  a parallel reduction of FVC and $FEV_1$ in coal mine dust–induced COPD, distinguishing it from smoking-induced COPD's characteristic reduction in the $FEV_1$ ratio.  *See* JA 49–50.  In its review, the Board

16

summarily disregarded Dr. Rosenberg's reliance on studies and literature post-dating the preamble. *See* JA 58. The agency errs in refusing to consider the impact of this post-preamble medical research on the credibility of Dr. Rosenberg's opinion.

There is no dispute that the DOL's view of the state of relevant scientific knowledge, as reflected in the 2000 preamble, may be relied upon in appropriate cases. *Harman Mining Co.*, 678 F.3d at 312. The preamble, adopted in January 2001, only reflects the state of scientific knowledge before 2000. Science marches on; it does not exist in a vacuum. New research can establish that various conclusions and assumptions held in the scientific community are either erroneous or incomplete. Pulmonary research has continued in the 13 years since the DOL announced review of the then-current pulmonary science in the regulatory preamble, and Dr. Rosenberg relies on ongoing research and more up-to-date scientific information.

The agency fact-finder failed to consider the credibility of Dr. Rosenberg's opinion in light of the more recent studies and literature discussed. The ALJ makes no mention of this more recent research, but mechanically rejects Dr. Rosenberg's opinion as contrary to the preamble. *See* JA 49–50. The Board also disregarded the failure to consider the impact of post-preamble research and

claimed the ALJ's failure to consider that research in evaluating Dr. Rosenberg's

opinion was harmless error:

> The fact that Dr. Rosenberg cited recent medical literature
> "establish[ing] the limitations of defining COPD as simply a reduction
> in FEV1 or FEV1 percent values," Employer's Brief at 25 n.14, did
> not require the administrative law judge to conclude that
> advancements in science have negated the medical literature
> addressing the effects of coal mine dust exposure on the lungs, that
> was endorsed by DOL in the preamble. *See Cochran*, 718 F.3d at 324
> (observing that neither of the employer's medical experts "testified as
> to scientific innovations that archaized or invalidated the science
> underlying the Preamble").

JA 58.

The ALJ's failure to consider Dr. Rosenberg's discussion of recent medical

studies and literature, and the Board's refusal to require the ALJ to consider that

discussion in deciding this case, is arbitrary and capricious. The Administrative

Procedure Act ("APA") mandates that all material conflicts in the facts be

considered and resolved. *See* 5 U.S.C. § 557(c)(A). The BLBA specifically

commands that "all relevant evidence shall be considered" in determining

entitlement to black lung benefits. 30 U.S.C. § 923(b). Dr. Rosenberg's

discussion of the post-preamble medical studies and literature is relevant to

determining Mr. Wnek's entitlement to benefits. As Dr. Rosenberg explained,

these studies and literature reveal coal mine dust–induced COPD is characterized

by a parallel reduction in FVC and $FEV_1$, as opposed to the reduction in the $FEV_1$

ratio characteristic of smoking-induced obstruction. The differences between the

effects of the two exposures aided him in determining Mr. Wnek's impairment arose from cigarette smoking and not coal mine dust exposure. Such highly relevant evidence must be considered and not summarily disregarded, as all relevant evidence must be considered.

The Board relied on *Westmoreland Coal Co. v. Cochran*, 718 F.3d 319 (4th Cir. 2013), to support its assertion that Dr. Rosenberg's reliance on medical studies and literature post-dating the preamble "did not require the administrative law judge to conclude that advancements in science have negated the medical literature addressing the effects of coal mine dust exposure on the lungs, that was endorsed by DOL in the preamble." JA 58. Reliance on *Cochran* is errant as *Cochran* undermines the Board's legal conclusion. In *Cochran*, the employer argued its experts "relied on advancements in science in medicine since the implementation of the Preamble that purportedly facilitate the differentiation of coal mine dust-induced and smoke-induced emphysema, which the ALJ supposedly ignored because of how he interpreted the Preamble." *Cochran*, 718 F.3d at 323–24.

The similarities between this case and *Cochran* end there. *Cochran* explained that neither [expert] "testified as to scientific innovations that archaized or invalidated the science underlying the Preamble." *Id.* at 324. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

████████████████████████ ██████████████ JA 85.

*Cochran* also noted only one expert "cited literature that post-dates the Preamble—
none of which appears to even discuss the effects of coal mine dust exposure on
the lungs." *Cochran*, 718 F.3d at 324.  The literature Dr. Rosenberg discusses is
relevant to the medical issues in dispute because it reinforces his analysis that coal
mine dust can be eliminated as a cause of Mr. Wnek's impairment based on its
unique pattern of obstruction.

 *Cochran* provides no support for the Board's refusal to require the agency
fact-finder to consider Dr. Rosenberg's discussion of the more recent medical
literature.  While Dr. Rosenberg's post-preamble literature "did not *require*" the
ALJ to conclude that scientific advancements revealed by this literature "have
negated the medical literature addressing the effects of coal mine dust exposure on
the lungs, that was endorsed by DOL in the preamble," JA 58 (emphasis added),
the ALJ had to consider its impact.  The BLBA compels all relevant evidence be
considered.  30 U.S.C. § 923(b).  The APA requires a fact-finder to resolve all
material conflicts of fact, *see* 5 U.S.C. § 557(c)(A), and for this case the
physicians' opinions and all their supportive reasoning must be considered.  While
an ALJ is not *required* to credit the post-preamble literature's conclusions over
those of the preamble (assuming *arguendo* that the two differ), this does not mean
the ALJ need not consider them at all.  No fact-finder is *required* to credit the

20

opinion or reasoning of any medical expert, but the BLBA and the APA compel

the ALJ to consider the expert's opinion and reasoning in determining entitlement

to benefits.  As the post-preamble medical literature is highly relevant to the

weight Dr. Rosenberg's analysis and diagnosis merit in this case, the Court should

vacate the decision and remand for adequate reconsideration of Dr. Rosenberg's

opinion.

> **b.     The agency relied on invalid reasoning to discredit Dr. Gregory J. Fino's opinion.**



21



*Id.*

*Id.*

JA 147–48.

The ALJ afforded little weight to Dr. Fino's opinion, and the Board affirmed. JA 50, 57–58. While the fact-finder has great discretion in weighing evidence, the resolution must be supported by substantial evidence in the record and be consistent with law. ALJ Lesniak cited cases in which other fact-finders accorded Dr. Fino's positions little weight, and believed this established as a matter of law that Dr. Fino's positions "have been discredited by the Board." The first of these positions was Dr. Fino's understanding of "average loss in $FEV_1$"; the second was Dr. Fino's belief "that the amount of emphysema present is related to the amount of coal dust seen pathologically." JA 50. In support, the ALJ cites a page of the preamble (65 Fed. Reg. 79,941 (Dec. 20, 2000)) and the unpublished Board case of *Sexton v. Buck Creek Coal Co.*, BRB Nos. 10-0191 and 10-0192

BLA (Ben Rev. Bd. Feb. 11, 2011), *aff'd*, 706 F.3d 756 (6th Cir. 2013), *cert denied*, 134 S. Ct. 898 (2014).

ALJ Lesniak applies an arbitrary and capricious use of precedent. While an ALJ's determinations concerning credibility in another case with other facts could be reasonable, that is not precedent that in all cases the same expert's opinion in the new case must be accorded the same credibility finding. If prior considerations were binding on future cases, ALJ Lesniak's discrediting of Drs. Saludes, Schaaf, and Knight in previous cases would bind him in Mr. Wnek's case. *See, e.g., Freeman v. R&F Coal Co.*, 2007-BLA-5958 (OALJ Jan. 2, 2013) (giving Dr. Saludes less weight because "he only reviewed limited medical data and was not privy to later qualifying PFT results"); *R.S. v. Director, OWCP*, 2005-BLA-6014 (OALJ May 11, 2007) ("Judge Lesniak determined that Dr. Schaaf's opinion on the etiology of the miner's pneumoconiosis was too equivocal and uncertain to establish a relationship between his coal mine employment and pneumoconiosis."); *Bernardi v. McElroy Coal Co.*, 2008-BLA-05557 (OALJ Aug. 31, 2011) (giving Dr. Knight's opinion less weight because it is based on an incomplete picture of the miner's medical condition). Such a use of precedent yielding an absurd result is irrational and not how precedent is used.

Similar to the improper discrediting of Dr. Rosenberg, the discrediting of Dr. Fino stems from a failure to consider all relevant evidence in the record

regarding Dr. Fino's analysis, the actual findings of the preamble, and relevant

Board precedent.  With respect to "Dr. Fino's understanding of 'average loss of

$FEV_1$,'" JA 50, the ALJ does not specify what it is about Dr. Fino's

"understanding" that has "been discredited by the Board," *id.*  While ALJ Lesnisk

cites *Sexton*, *Sexton* does not address Dr. Fino's (or any physician's)

"understanding of the average loss of $FEV_1$."  The ALJ fails to sufficiently explain

his reasoning for affording little weight to Dr. Fino's opinion so a reviewer can

understand what he did.  *See Gunderson v. U.S. Dept. of Labor*, 601 F.3d 1013,

1024 (10th Cir. 2010) ("Section 557(c)(3)(A) [of the Administrative Procedure

Act] . . . requires an agency's adjudicative decision to be accompanied by a clear

and satisfactory explication of the basis on which it rests.") (internal quotation

marks removed); *see also Lane Hollow Coal Co. v. Director, OWCP*, 137 F.3d

799, 803 (4th Cir. 1998) (must be able to "understand what the ALJ did and why

he did it" to satisfy the APA).

    Assuming *arguendo* the ALJ sufficiently identified the parts of Dr. Fino's

"understanding of average loss of $FEV_1$," the reasoning is untenable.  The ALJ

says the preamble "specifically find[s] that Dr. Fino's conclusion regarding

'average loss of $FEV_1$' does 'not stand up to scrutiny.'"  JA 50 (citing 65 Fed. Reg.

79,941 (Dec. 20, 2000)).  What the preamble actually rejected about Dr. Fino's

"understanding of average loss of $FEV_1$" was very limited and mundane:

24

> Drs. Fino and Bahl state that "an average loss of FEV1 means that 50% of the miners will have losses in excess of the average and 50% will have losses smaller than the average." This conclusion does not stand up to scrutiny because it confuses the *average* with the *median*.

65 Fed. Reg. 79,941. "This conclusion" refers to Drs. Fino and Bahl's statement in the previous sentence which the DOL found confused "average" with "median" in describing average loss of $FEV_1$. The preamble does not sweepingly reject everything Dr. Fino has to say about the average loss of $FEV_1$.





JA 146–47.

JA 147.

26

███████████████████████████████ ███████████████

███████████████████████████████████████  JA 212.

The preamble does not address the "understanding of average loss of $FEV_1$" Dr. Fino discusses in his medical report.  The preamble's rejection of one particular and isolated conclusion, one Dr. Fino does not reach in the medical report in his case, cannot justify summarily dismissing Dr. Fino's entire discussion of the average loss of $FEV_1$.

Contrary to the ALJ's finding, Dr. Fino's belief "that the amount of emphysema present is related to the amount of coal dust seen pathologically" is consistent with both Board precedent and the preamble.  In *Sexton*, what the ALJ and the Board found objectionable was not Dr. Fino's view (shared in *Sexton* by Dr. Jarboe), that the amount of emphysema in the lungs is related to the amount of coal dust seen pathologically, but a focus on "**the need for x-ray evidence** of nodulation or dust retention," as this "cannot be reconciled with either the definition of legal pneumoconiosis or the terms of 20 C.F.R. § 718.202(a)(4)," which state that pneumoconiosis may be diagnosed notwithstanding a negative x-ray.  *Id.* at 9 n.8 (emphasis added).  Specifically, the Board held the ALJ "acted within his discretion in finding that Dr. Jarboe did not sufficiently explain why the miner's coal mine employment had no role in the development of his emphysema

27

and focused 'on the lack of clinical pneumoconiosis.'" *Sexton*, BRB Nos. 10-0191

and 10-0192 BLA, at 9.



*See* JA 147.

*Id.*

The preamble expressly agrees with Dr. Fino that the amount of emphysema

present is related to the amount of coal mine dust seen pathologically**:**

> Centrilobular emphysema (the predominant type observed) was significantly more common among the coal workers. **The severity of the emphysema was related to the amount of dust in the lungs. These findings held even after controlling for age and smoking habits.**
>
> . . . .
>
> Leigh performed a multiple regression analysis to assess the effects of total lung coal content . . . on pulmonary function, extent of emphysema, and extent of fibrosis. . . . **He made the following important findings: (1) The extent of emphysema was strongly related to the total coal content of the lung, age and smoking;** (2) in miners who were life-long non-smokers, the extent of emphysema was strongly related to coal content and age . . . . **The authors concluded that "these results provide strong evidence that**

> **emphysema in coal workers is causally related to lung coal content."**
>
> Ruckley and colleagues achieved similar results in examining the lungs of 450 coal workers to determine the association between coal mine dust exposure and dust-related fibrosis and emphysema. . . . **The authors found . . . increasing coal lung dust was associated with the presence of emphysema**. . . . Ruckley concluded that "the results support the conclusion that the relationship observed between respirable dust and emphysema in coal workers is, in some way, causal.

65 Fed. Reg. at 79,941–42 (citations omitted) (emphasis added).  Administrative

Appeals Judge Boggs echoes this in her concurring opinion in *Sexton*:

> Although the DOL did not specifically state in the preamble to its final regulations that emphysema is caused by coal dust exposure only when dust is retained in the lungs, it cited, with approval, studies finding that the extent of emphysema is related to the amount of dust in the lungs, and used them as support for including obstructive pulmonary diseases in the definition of legal pneumoconiosis, *i.e.*, finding obstructive lung disease can be caused by coal dust exposure.

*Id.* at 22 (Boggs, J., concurring).  There is no basis to find Dr. Fino's opinions

conflict with precedent or the preamble.

    In sum, the ALJ's rejection of the medical opinions from Drs. Rosenberg

and Fino is based on a misinterpretation of the opinions, the preamble, the

regulations, and precedent.  The Court should vacate and remand for further

consideration of these medical opinions in a manner consistent with law.

2.    **The statute's language and Supreme Court precedent confirm operators are not limited to 30 U.S.C. § 921(c)(4)'s methods of rebuttal.**

The ALJ and the Board improperly limit McElroy's ability to rebut the 15-year presumption of 30 U.S.C. § 921(c)(4). Certain benefits claimants are accorded a presumption of total disability due to pneumoconiosis where at least fifteen years of qualifying coal mine employment and a totally disabling pulmonary impairment are established. This "15-year presumption" is rebutted only under specific circumstances:

> The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

30 U.S.C. § 921(c)(4). This case presents the question of whether this clause of the statute applies to operators. The Supreme Court answered no. *Usery*, 428 U.S. at 35.

That statutory provision limits the evidentiary means of rebutting the presumption to: (1) establishing the miner does not have pneumoconiosis; or (2) establishing the miner's disabling impairment does not arise out of coal mine employment. § 921(c)(4). Unlike the other sections of § 921(c), subsection (c)(4)

limits the rebuttal methods only to the Secretary in its defense of claims.[4]  *See id.*

The unambiguous statutory language places no limits of any kind on a coal mine

operator's ability to rebut the 15-year presumption.  *See id.*

Despite the unambiguous statutory language, the agency has imposed on

McElroy the same limited means of rebutting the 15-year presumption as the

Secretary.  The ALJ required McElroy to affirmatively show that Mr. Wnek does

not have pneumoconiosis or his totally disabling respiratory or pulmonary

impairment did not arise out of, or in connection with, his coal mine employment.

JA 47.  For the reasons given in *Owens v. Mingo Logan Coal Co.*, 25 Black Lung

Rep. 1-1, 1-4–5 (Juris.) (Ben. Rev. Bd. 2011), the Board concluded that the

rebuttal provisions of amended Section 411(c)(4)[5] [30 U.S.C. § 921(c)(4)] apply to

claims brought against responsible operators.  JA 56.

*Usery* is antithetical to such a holding: coal mine operators are not limited to

rebutting the 15-year presumption through § 921(c)(4)'s two delineated methods.

*See Usery*, 428 U.S. at 35 ("[W]e think it clear as a matter of statutory construction

that the § 411(c)(4) limitation on rebuttal evidence is inapplicable to operators.").

---

[4]     The other presumptions of 30 U.S.C. § 921(c)(1)–(3) and (5) do not
differentiate rebuttal by the Secretary as compared to coal mine operators.

[5]     The 30 U.S.C. § 411 statutory section numbering refers to the original
BLBA, Pub. L. No. 92-303 (May 19, 1972), and is now referred to by its current
statutory identification, 30 U.S.C. § 921.

Only the Secretary is so limited. *Id.* Applying § 921(c)(4)'s rebuttal limitations to operators is contrary to the statute's unambiguous language and to *Usery.* Because the agency erred in applying the law and improperly limited McElroy's ability to rebut the 15-year presumption, the Court should vacate and remand this matter to the agency for consideration consistent with law.

In *Usery*, the Court considered the 1972 BLBA amendments, which broadened the BLBA's benefits provisions in several ways and transferred liability from the Social Security Administration to private coal mine operators. *Id.* at 8. The 1972 amendments included the enactment of 30 U.S.C. § 921(c)(4)'s 15-year presumption. *Id.* at 11. The coal mine operators claimed the 1972 amendments were unconstitutional by requiring benefits payment to miners who left coal mine employment before the BLBA's effective date, and that the definitions, presumptions, and rebuttal limitations in the 1972 amendments unconstitutionally impaired coal mine operators' ability to defend against claims. *Id.* at 12.

The district court upheld the amended BLBA with few exceptions. *Id.* at 13. Relevant here is the district court's interpretation of § 921(c)(4) as applying the 15-year presumption's rebuttal limitations to operators in certain cases.[6] *Id.* The

---

[6]    Specifically, to § 415 "transition-period cases." *See Usery*, 428 U.S. at 9–10 ("Claims filed during the transition period between the Federal Government benefit provision under Part B, and state plan or operator benefit provision under

[Continued…]

district court struck down the limited means of rebutting the presumption as the limitations did not permit operators to rebut on the grounds that a claimant's presumed pneumoconiosis was not disabling or that it did not arise out of work in the operator's own coal mine. *Id.* at 34–35.

In a direct appeal, the Supreme Court affirmed most of the district court's conclusions. One exception was the lower court's conclusion regarding the constitutionality of the 15-year presumption's rebuttal limitations. "Because we read the limitation on rebuttal evidence in § 411(c)(4) [30 U.S.C. § 921(c)(4)] as inapplicable to Operators, however, we vacate that portion of the District Court's order which invalidates that limitation." *Id.* at 14. The Supreme Court did not address whether the rebuttal limitations were constitutional, as it found those limits of § 921(c)(4) did not even apply to operators:

> We need not inquire into the constitutional questions raised by the District Court, however, because we think it clear as a matter of statutory construction that the § 411(c)(4) limitation on rebuttal evidence is inapplicable to operators. By the language of § 411(c)(4), the limitation applies only to "the Secretary" and not to an operator seeking to avoid liability § 415 or 422. And this plain language is fortified by the legislative history. The Senate Report on § 411(c)(4) specifically states that the limitation on rebuttal applies to the

---

Part C that is, July 1 to December 31, 1973 are adjudicated under § 415 of Part B, 30 U.S.C. § 925, by the Secretary of Labor. The United States is responsible for payment of these claims until December 31, 1973."). The district court "apparently recogniz[ed] that the § 411(c)(4) limitation on rebuttal evidence could not apply against an operator in a Part C determination . . . ." *Id.* at 36.

> Secretary of Health, Education, and Welfare, but nowhere suggests that it binds an operator.

*Id.* at 35. "In short, we conclude that the Act does not itself limit the evidence with which an operator may rebut the § 411(c)(4) presumption." *Id.* at 36–37. From this it would seem to follow the Court prohibited the agency from limiting the evidence operators could use to rebut the 15-year presumption. *See id.* at 37.

This Court recently considered this issue in *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550 (4th Cir. 2013), but did not resolve it. In *Owens*, as here, the agency fact-finder limited operators to § 921(c)(4)'s two rebuttal methods. The operator argued in *Owens* that operators must not be limited in their means of rebutting the 15-year presumption and must be allowed to rebut the presumption through a third method, by showing a claimant's pneumoconiosis was mild and did not substantially contribute to total disability. *See id.* at 554–55 (majority opinion), 560 (Niemeyer, J., concurring).[7]

---

[7]    The Director conceded in *Owens* that: (1) "[t]he Supreme Court's opinion on what the statute says does bind us, writing our regulation," *see* Oral Argument, *Owens*, No. 11-2418, at 25:45, http://www.ca4.uscourts.gov; and (2) "Section 921(c)(4)'s rebuttal-limiting sentence does not apply to private parties," Brief for the Federal Respondent at 17, *Owens*, No. 11-2418 (Jan. 22, 2013), *available at* 2013 WL 249264 at *17. Now, in recent comments to the newly promulgated regulations, the Director's position has altered. *See* Regulations Implementing the Byrd Amendments to the Black Lung Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits, 78 Fed. Reg. 59,102, 59,105–07 (Sept. 25, 2013) (to be codified at 20 C.F.R Parts 718 and 725).

The *Owens* majority did not reach the challenge to the presumption's

rebuttal standard, as it held that the ALJ did not apply rebuttal limitations to the

operator, and the Board affirmed the ALJ's analysis as supported by substantial

evidence. *Id.* at 555–56. The ALJ's finding the operator failed to establish that the

claimant's respiratory disability "is due to a condition other than pneumoconiosis"

revealed the ALJ applied the operator's suggested third rebuttal method.

*Id.* at 556. "The ALJ thus effectively rejected the evidence offered by Mingo

Logan to rebut element (4) [that pneumoconiosis caused the total disability] by

showing that pneumoconiosis was not a *substantially contributing* cause of Owens'

total disability." *Id.* The majority also concluded that, by affirming the ALJ's

decision, the Board affirmed the ALJ's application of the operator's suggested

third rebuttal method:

> In short, while the Benefits Review Board purported to subject the
> employer to the rebuttal methods applicable to the Secretary in
> § 921(c)(4), it concluded <u>in substance</u> that no aspect of the
> presumption was rebutted, affirming the ALJ's finding that Mingo
> Logan failed to show that Owens *had only mild pneumoconiosis that
> did not substantially contribute to his total disability*.

*Id.* (second emphasis added). "[T]he ALJ considered all of the evidence that

Mingo Logan offered to demonstrate that pneumoconiosis did not cause *or

substantially contribute to Owens' total disability*, and the Board affirmed the

substance of the ALJ's analysis." *Id.* at 559 (emphasis added).

35

In a concurring opinion, Judge Niemeyer separately addressed the standard for rebutting the 15-year presumption. *Id.* He agreed that operators may not be limited to the two means of rebutting the 15-year presumption specified in § 921(c)(4). *See id.* at 559–60. Rejected was the Director's position that § 921(c)(4)'s two rebuttal methods are the only logical methods by which the presumption may be rebutted. *See id.* at 560–61. Judge Niemeyer agreed McElroymust be allowed to rebut the presumption by showing a claimant has mild pneumoconiosis that did not substantially contribute to total disability:

> Because the statute specifies that the *Secretary* may rebut the presumption only by showing that the miner does not have pneumoconiosis (rebutting claim element (1)) or that there is no connection between the miner's disability and his coal mine employment, it imposes a *higher* standard for rebuttal than would otherwise be logically permissible to rebut claim element (4). Claim element (4) could logically be rebutted by showing that the miner's pneumoconiosis was not a *substantially contributing* cause of his total disability, even if it contributed some minimal amount to his impairment. *See* 20 C.F.R. § 718.204(c)(1). In this way, the statute limits the Secretary's ability to rebut claim element (4). But the statute is silent about the scope of an *employer's* rebuttal, and the employer's methods of rebuttal are thus not limited. Consequently, because the presumption covers claim elements (1), (2), and (4), the employer may carry its burden by introducing evidence rebutting any of these elements, *without limitation.*
>
> Owens and the Director failed to appreciate the statutory language and the logic of § 921(c)(4), claiming that the Secretary's rebuttal methods are also the employer's only logical rebuttal methods, especially when the various elements of a claim are examined through their definitions. But the straightforward language of § 921(c)(4) belies their position, as noted. Moreover, the Supreme Court has confirmed the existence of a *limitation* on the Secretary that does not apply to the

36

employer, necessarily recognizing that rebuttal methods (A) and (B) identified in § 921(c)(4) are not logically equivalent to the methods that would otherwise be available.

In *Usery,* the Court actually stated that the rebuttal methods of § 921(c)(4) were *limiting. Usery,* 428 U.S. at 34. And precisely because they were limiting, the coal mine operators involved in *Usery* made the same argument that Mingo Logan makes here:

> The Operators contend that this limitation erects an impermissible irrebuttable presumption, because it establishes liability even though it might be medically demonstrable in an individual case that the miner's pneumoconiosis was mild and did not cause the disability-that the disability was wholly a product of other disease, such as tuberculosis or emphysema. Disability due to these diseases, as the Operators note, is not otherwise compensable under the Act.

*Id.* at 34–35.  Accepting the legitimacy of the operators' argument, the Court held:

> [W]e think it clear as a matter of statutory construction that the [§ 921(c)(4)] limitation on rebuttal evidence is inapplicable to operators. By the language of [§ 921(c)(4)], the limitation applies only to "the Secretary" and not to an operator seeking to avoid liability [for benefits].

*Id.* at 35.

Accordingly, I would conclude that the Board announced and purported to apply to Mingo Logan rebuttal limitations that applied only to the Secretary and that, in this respect, it erred as a matter of law.

*Id.* (emphasis in original).

Unlike the factual situation in *Owens*, the issue of the proper standard of
rebuttal is presented by this case, as the ALJ here applied the § 921(c)(4) rebuttal
limits and found Drs. Fino and Rosenberg's opinions insufficient to rule out a
causal connection between total disability and coal mine employment.  The Court
should now adopt the reasoning in the concurring opinion in *Owens* and hold
operators are not limited to the two methods of rebutting the 15-year presumption
listed in 30 U.S.C. § 921(c)(4), and that operators may rebut the presumption by
proving a claimant has mild pneumoconiosis that did not substantially contribute to
total disability.

**3.    The rule-out standard for rebutting the 15-year presumption of
total disability due to pneumoconiosis should not apply to
operators.**

> **a. The rule-out standard arises from the language limiting
> rebuttal in § 921(c)(4).**

The agency has applied an inappropriate standard for McElroy to rebut the
presumption of a totally disabling respiratory or pulmonary impairment due to
pneumoconiosis by using the rule-out standard.

The ALJ explained that the Fourth Circuit requires the employer to "rule
out" a possible causal connection between a miner's disability and his coal mine
employment.  JA 50.  The ALJ concluded that McElroy could not rebut the
presumption of total disability due to pneumoconiosis because it could not "rule
out" an occupational cause of Mr. Wnek's totally disabling pulmonary impairment.

JA 50–51.  The Board also concluded that the ALJ correctly applied the "rule out" standard of rebuttal.  JA 56–57.  The rule-out standard is too excessive and not consistent with the permanent Part 718 criteria.

In *Rose*, the benefits claimant appealed the denial of a survivor's claim. *Rose v. Clinchfield Coal Co*, 614 F.2d at 939.  The agency had denied the claim because the miner's disability and death were caused by lung cancer and not by pneumoconiosis.  *Id.*  The Fourth Circuit reversed the denial of benefits.  The operator had not disputed the existence of pneumoconiosis, the existence of a totally disabling respiratory or pulmonary impairment, or fifteen years of qualifying coal mine employment.  *Id.* at 938–39.  Unlike the agency, the Fourth Circuit found the § 921(c)(4) 15-year presumption applied.  *Id.* at 939 ("The statute quite clearly gives the claimant, at this point, the benefit of a presumption that entitles her to compensation unless the Secretary rebuts that presumption in the precise manner specified.").

A coal mine operator was responsible for any payment of benefits in *Rose*, not the Secretary.  The operator failed to challenge the limitation on rebuttal and the panel applied the § 921(c)(4) rebuttal limitations on the operator, without discussing *Usery*.  *Id.* at 939.  The operator did not raise and the panel did not contemplate the impact of the 1976 *Usery* decision.  Under *Usery*, an operator was not limited to rebut the 15-year presumption "in the precise manner specified" by

the limiting clauses of § 921(c)(4).  *See supra*.  As pneumoconiosis was present,

the first method of rebutting the 15-year presumption—proving the absence of

pneumoconiosis—was not available.  *Id.* at 939.  Only the second method of

rebuttal—showing no causal connection between disability and coal mine

employment—was available.  The panel found "the Rose claim under section

411(c)(4) may be defeated only upon the respondents' production of substantial

evidence that the decedent's 'impairment did not arise out of, or in connection

with, employment in a coal mine.'"  *Id.*

      The *Rose* panel then stated the operator's burden of proof for rebutting the

presumption was to rule out any possibility of coal mine employment-disability

causation:

> The Board concluded that the claimant "did not establish entitlement
> to black lung benefits" under section 411(c)(4) of the Act because she
> failed to demonstrate "any causal relationship . . . between the miner's
> cancer and pneumoconiosis or between his cancer and his coal mine
> employment."   Her failure to demonstrate such a relationship,
> however, does not bar her recovery; on the contrary, it is the
> respondents' failure effectively to rule out such a relationship that is
> crucial here.

*Id.*  The rule-out standard was not further defined.  The operator's evidence,

treating physician testimony, did not satisfy this standard of proof.  *Id.*  "At best,

the testimony established only that the physician would not state with certainty that

the miner's cancer did arise from his previously existing pneumoconiosis or from

his work in the mines; the witness did not rule out the possibility of such a

40

connection." *Id.* The operator therefore did not rebut the 15-year presumption. *Id.* at 939–40.[8]

*Rose* addressed neither the holding in *Usery* that the limitations on rebuttal evidence do not apply to operators, nor the Fourth Circuit's previous acknowledgement of *Usery*'s holding. *See Talley v. Mathews*, 550 F.2d 911, 916 n. 11 (4th Cir. 1977) ("In *Usery v. Turner Elkhorn Mining Co.* . . . the Supreme Court did not consider the constitutionality of the limitations on rebuttal evidence available to the Secretary under § 921(c)(4), because the claims involved were against the coal operators only, and as to them the court held that the limitations on rebuttal evidence did not apply."). As limitations on rebuttal cannot apply to operators, *Rose*'s rule-out standard is also inapplicable.

McElroy does not question, when the 15-year presumption applies, the statute shifts the burden of persuasion to the coal mine operator to rebut the presumption. While an operator has the burden of persuasion, the standard of proof required to satisfy that burden can be no greater than that required for the claimant to prove his case where the 15-year presumption does not apply. Operators may not be held to a different standard of proof than claimants, even where the 15-year presumption under § 921(c)(4) applies. *See Usery*, 428 U.S.

---

[8]    This type of equivocal testimony would still be insufficient to rebut the 15-year presumption under the standard suggested by McElroy.

at 35; *see also Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 280–81 (1994) (the party going forward has the burden of proving every element of entitlement by a preponderance of the evidence).  Without aid of the 15-year presumption, a claimant's standard of proof is to establish, by a preponderance of the evidence, that "pneumoconiosis . . . is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment." 20 C.F.R. § 718.204(c)(1).  This requires proof that pneumoconiosis "has a material adverse effect on the miner's respiratory or pulmonary condition, or materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment."  *Id.* Absolute certainty is unnecessary.  A particularized, percentage-based finding is not needed to determine pneumoconiosis contributed to a miner's impairment. *Consolidation Coal Co. v. Swiger*, 98 F. App'x 227, 238 (4th Cir. 2004) (unpub.) (attached).  To rebut the 15-year presumption, an operator need not prove pneumoconiosis played absolutely no role in the disability, but only that pneumoconiosis did not *cause* the disability.  Mild pneumoconiosis or proof that another lung disease caused the disability is sufficient to deny benefits.  *See Usery*, 428 U.S. at 35.

     The claimant's "contributing-cause" standard is a much lower burden than a rule-out standard as imposed by the agency.  The agency has interpreted "rule-out"

to require proof of no possible contribution to impairment.  While an operator's rebuttal evidence might satisfy the contributing-cause standard, it might not satisfy the higher burden of the rule-out standard.  Such a standard of proof contravenes the BLBA's purpose to provide benefits to those disabled due to pneumoconiosis. 30 U.S.C. § 901.  This does not include retired miners disabled by years of cigarette smoking with mild pneumoconiosis that does not play a substantial role in causing impairment.  Cases from the Seventh Circuit, which hold operators to the contributing-cause standard of proof instead of the rule-out standard, illustrate the effect of these two disparate standards.

In a Part 727 "interim presumption" case (which provided a presumption of total disability due to pneumoconiosis similar in operation to the statutory 15-year presumption), an operator contended its evidence was sufficient to rebut the presumption.  *Amax Coal Co. v. Beasley*, 957 F.2d 324, 326-29 (7th Cir. 1992). The Seventh Circuit agreed that the operator's evidence rebutted the presumption under the contributing-cause standard.  "Once a black lung claimant establishes a presumption of total disability and entitlement to benefits an employer may rebut the presumption by, among other things, showing that CWP was not a 'contributing cause' of the claimant's disability." *Id.* at 327.  "A contributing cause is a necessary, though not necessarily sufficient, cause of the miner's disability." *Id.*  The Seventh Circuit explained, "[t]hus, an employer can rebut the

43

presumption of disability due to coal workers' pneumoconiosis by showing, for example, that a claimant's smoking would have disabled him by itself, even if he had spent his life as an accountant rather than a miner." *Id.*

One of the physicians' opinions offered by the operator was enough to establish rebuttal under the contributing-cause standard, even though it would not establish rebuttal under the rule-out standard. "True, Dr. Sanjabi could not completely rule out CWP as a possible factor in Beasley's condition, but it was improper for the ALJ to use this 'equivocation' as a basis for finding no rebuttal." *Id.* The standard on rebuttal is not proof beyond a reasonable doubt, but proof by a preponderance of the evidence. *Id.* The physician had said it was within the realm of reasonable medical certainty that the claimant's reduction in pulmonary status was due to his cigarette smoking; this statement met the rebuttal standard. "[W]e do not require utter certainty in medical opinions, nor would we expect dogmatic diagnoses from a careful scientist. [The physician's] caution should not have been used as an excuse to award benefits." *Id.*

The Seventh Circuit further illustrated the difference between the contributing-cause and rule-out standards in *Blakely v. Amax Coal Co.*, 54 F.3d 1313 (7th Cir. 1995). *Blakely* sought review of the ALJ's denial of benefits. The operator did not dispute that *Blakely* properly invoked the 15-year presumption. *Id.* at 1320. The issue on appeal was whether the operator successfully carried its

44

burden of rebutting the presumption.  To satisfy this burden, the operator had to

prove by a preponderance of the evidence that coal dust exposure was not a

contributing cause of the claimant's disabling pulmonary impairment.  *See id.*

"If Amax establishes that a miner would have been disabled regardless of exposure

to coal dust, then the coal dust has not contributed to the disability."  *Id.*  The Court

explained:

> The ALJ did not limit his review of the evidence to one study or
> witness, and ultimately determined that on the whole the evidence
> supported the conclusion that Amax carried its rebuttal
> burden…Although the experts did not conclusively rule out coal
> workers' pneumoconiosis as a possible factor in Blakely's condition,
> this by itself does not preclude Amax from rebutting the
> presumption…Dr. Orris testified that Blakely's cigarette smoking and
> exposure to welding fumes together were sufficient to cause all of
> Blakely's pulmonary impairment.   Dr. Rasmussen testified that
> Blakely's cigarette smoking alone was sufficient to have caused all of
> his pulmonary impairment.  Furthermore, Drs. Miller and Wilhelmus
> agreed with the other testimony that Blakely's 80-pack year smoking
> history caused all of his impairment.   Notwithstanding Blakely's
> contentions regarding Dr. Tuteur's medical opinions, Dr. Tuteur is not
> a newcomer to black lung litigation before this court…We previously
> have recognized that "Dr. Tuteur [is] a well qualified expert (a clinical
> professor at a well-known medical school)…"…We do not fashion
> ourselves as medical experts and do not reweigh each bit of medical
> testimony.  Under the circumstances of this case, the ALJ properly
> weighed the conflicting evidence and made his determination.

*Id.* at 1322 (internal citations omitted).

Under the teaching of *Usery*, the limitations on rebuttal evidence in

§ 921(c)(4) do not apply to operators.  The Part 718 criteria should be applied;

these standards apply to operators and claimants alike.  Since 20 C.F.R.

45

§ 718.204(c)'s "contributing cause" standard of proof governs a claimant's affirmative case, it must also govern an operator's rebuttal case. An operator can rebut the 15-year presumption by showing pneumoconiosis neither had a material adverse effect on the claimant's respiratory or pulmonary condition, nor materially worsened a totally disabling respiratory or pulmonary impairment caused by a disease or exposure unrelated to coal mine employment. *See* § 718.204(c)(1).

The regulations cannot require an operator to rule out any possible connection. Both Drs. Fino and Rosenberg diagnosed Mr. Wnek with smoking-induced lung disease instead of pneumoconiosis. These doctors' opinions are more than sufficient for rebuttal under a contributing-cause standard. This case should therefore be vacated and remanded for application of the correct rebuttal standard.

### b.    *Rose* should be limited or overruled to preclude applying the rule-out standard to operators' burden of rebuttal.

McElroy's requested relief—remanding to establish rebuttal, unconstrained by § 921(c)(4)'s limitations on rebuttal methods and under the appropriate contributing-cause standard—conflicts with *Rose*. *Rose* failed to apply, or even address, the Supreme Court's controlling *Usery* precedent. Because *Usery* compels McElroy's requested relief, this Court should now limit *Rose* to only to the Secretary. This interpretation would make *Rose* entirely consistent with *Usery*, with the plain language of § 921(c)(4), and with the 1977 decision in *Talley*. This

46

reading would render Fourth Circuit precedent consistent with that of the Supreme Court and would avoid creating an intra-circuit split between this case and *Rose*.

*Rose*'s conclusions about the applicability of the rebuttal limitations and the rule-out standard to operators are *dicta*, and not controlling. In *Rose*, the agency had required the claimant to prove causality between the miner's cancer and his pneumoconiosis or coal mine employment. *Rose*, 614 F.2d at 939. The causation proof was unnecessary as the claimant had established the prerequisites for invoking the 15-year presumption. *Id.* The agency erred by failing to invoke the presumption and shift the burden of rebuttal to the operator. *Id.* The case could have been resolved by vacating the denial of benefits and remanding with directions to shift the burden of proof to the operator to rebut the presumption. It was unnecessary to go further by concluding the operator's means of rebutting the presumption were limited to those listed in § 921(c)(4), and that the operator's ability to satisfy those means was governed by the rule-out standard. As they were unnecessary to the Court's holding the Board erred in placing the burden of proof on the claimant, *Rose*'s rebuttal limitations and rule-out conclusions are unbinding *dicta*. "*Dictum* is [a] statement in a judicial opinion that could have been deleted without seriously impairing the analytical foundations of the holding—that, being peripheral, may not have received the full and careful consideration of the court that uttered it." *Pittston Co. v. United States*, 199 F.3d 694, 703 (4th Cir. 1999)

47

(internal quotation marks omitted). The Court may disregard these conclusions in resolving this appeal.

In the Fourth Circuit, one panel cannot overrule another panel's decision. *See McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) (en banc). This rule is not a jurisdictional limit on a panel's ability to overrule a prior panel, it is only a statement of *stare decisis*, a rule of prudence or judicial etiquette. "[S]*tare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision, however recent and questionable, when such adherence involves collision with a prior doctrine more embracing in its scope, intrinsically sounder, and verified by experience." *Helvering v. Hallock*, 309 U.S. 106, 119 (1940). As Judge Niemeyer explained, "while *stare decisis* is a preferred course—a principle of policy—a court is not required to follow its precedent when governing decisions are unworkable or are badly reasoned." *McMellon*, 387 F.3d at 355 (Niemeyer, J., concurring in part and dissenting in part) (internal quotation marks removed).

This case presents good reasons this panel should overrule the decision in *Rose*. First, *Rose* contravenes *Usery*. *Rose* never considered *Usery*, and did not substantively address *Usery*. The parties never briefed the effect of *Usery* for consideration. Had the parties brought *Usery* to the Court's attention, it may well have held then as McElroy is asking it to hold now. This Court is now in a

48

position to account for *Usery*'s holding, which precludes applying § 921(c)(4)'s

rebuttal limitations, and therefore the rule-out standard, to operators.  The Court

can properly account for *Usery* by overruling *Rose*.

Second, *Rose* was decided over thirty years ago.  Since then, the definition

of "disability" has changed significantly.  When *Rose* was decided in 1980, the

Department of Health, Education, and Welfare's black lung regulations defined

"disability."[9]  Today, the black lung regulations define "disability" differently.[10]

---

[9]     The now-repealed 20 C.F.R. § 410.412 defined "disability" as follows:

(a)     A miner shall be considered totally disabled due to
        pneumoconiosis if:

      (1)     His pneumoconiosis prevents him from engaging in
        gainful work in the immediate area of his residence
        requiring the skills and abilities comparable to those of
        any work in a mine or mines in which he previously
        engaged with some regularity and over a substantial
        period of time (that is, "comparable and gainful work",
        *see* §§ 410.424–410.426); and

      (2)     His impairment can be expected to result in death, or has
        lasted and can be expected to last for a continuous period
        of not less than 12 months.

[10]    20 C.F.R. § 718.204 (2013) defines "disability" as follows:

(b)(1) Total disability defined. A miner shall be considered
totally disabled if . . . the miner has a pulmonary or respiratory
impairment which, standing alone, prevents or prevented the
miner:

[Continued…]

49

This considerable change in one of the two prerequisites for invoking the 15-year presumption gives one example of how much the law governing *Rose*'s subject-matter has changed over the last thirty years.  A panel may overrule another if there has been a change in the applicable law.  *See, e.g., Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008); *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 507 (6th Cir. 2004); *United States v. King*, 276 F.3d 109, 112 (2d Cir. 2002).  Since the regulatory foundation of *Rose*'s holding has changed, it makes little sense to adhere to that holding today, especially as it directly conflicts with Supreme Court precedent.

Third, overruling *Rose* would also correct an inconsistency in the Fourth Circuit's precedent on the issue of this appeal.  In *Talley*, 550 F.2d 911, which preceded the decision in *Rose*, the Fourth Circuit recognized that *Usery* held the § 921(c)(4) rebuttal limitations do not apply to operators:

> In *Usery v. Turner Elkhorn Mining Co.* . . . the Supreme Court did not consider the constitutionality of the limitations on rebuttal evidence available to the Secretary under § 921(c)(4), because the claims

---

> (i) From performing his or her usual coal mine work; and

> (ii) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time.

> involved were against the coal operators only, and as to them the court
> held that the limitations on rebuttal evidence did not apply.

*Id.* at 916 n.11. If the rebuttal limitations do not apply to operators, then neither

does the rule-out standard, which is how one satisfies those limits. *Talley* shows

the Fourth Circuit agreed early on that § 921(c)(4)'s rebuttal limitations do not

apply to operators, and this conclusion is compelled by the Supreme Court's *Usery*

decision. *Talley* is further evidence that *Rose* was wrongly decided and that the

rule-out standard as applied to operators has no basis.

The Fourth Circuit had also applied § 921(c)(4)'s rebuttal limitations to an

operator one year before *Rose* in another published decision, *Clinchfield Coal*

*Co. v. Fleming*, 606 F.2d 441 (4th Cir. 1979). *Fleming* did not apply the rule-out

standard adopted in *Rose*. The reasons for overruling *Rose* apply equally to

*Fleming*. Regarding the rebuttal limitations, both *Fleming* and *Rose* contradict

prior Supreme Court (*Usery*) and prior Fourth Circuit (*Talley*) precedent.

Although each applied the rebuttal limitations to operators, neither *Fleming* nor

*Rose* addressed *Usery*'s contrary, controlling holding. As with *Rose*, over thirty

years of significant changes to the BLBA have passed since *Fleming*, undermining

the basis of both decisions. And also like *Rose*, *Fleming* did not mention *Talley*'s

acknowledgement that *Usery* held the § 921(c)(4) rebuttal limitations do not apply

to operators.

Given these considerations, if the Court does not believe *Rose*'s conclusions about the rebuttal limitations and the rule-out standard are erroneous, or that they can be limited so they are not controlling, the Court should overrule *Rose* (and *Fleming*, if necessary) to make Fourth Circuit precedent consistent with Supreme Court precedent.

**4.    Regulations that impose limits for rebutting the 15-year presumption on operators are invalid.**

In applying the 15-year presumption's rebuttal limitations to McElroy, the ALJ relied on both a statute, 30 U.S.C. § 921(c)(4), and a regulation, 20 C.F.R. § 718.305 (2000).  JA 36, 50, 51.  Both the statute and the regulation delineate the same two limited rebuttal methods.  Unlike the statute, 30 U.S.C. § 921(c)(4), the regulation does not restrict rebuttal limitation to only the Secretary.  The regulation is invalid because it conflicts with the statute.

Section 921(c)(4) provides, "The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine"  The last sentence of 20 C.F.R § 718.305(a) (2000) provides, "The presumption may be rebutted only by establishing that the miner does not, or did not have pneumoconiosis, or that his or her respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine."  The first sentence of § 718.305(d) (2000) also

tracks § 921(c)(4) regarding the rebuttal limitations, but does not restrict them to

the Secretary: "Where the cause of death or total disability did not arise in whole or

in part out of dust exposure in the miner's coal mine employment or the evidence

establishes that the miner does not or did not have pneumoconiosis, the

presumption will be considered rebutted."

The DOL recently promulgated amendments to § 718.305 which went into

effect October 25, 2013.  20 C.F.R. § 718.305 (2013).[11]  Amended § 718.305 more

explicitly applies the § 921(c)(4) rebuttal limitations to operators.  The new

regulation reads, "the party opposing entitlement may rebut the presumption

by-(i) Establishing both that the miner does not, or did not, have: (A) Legal

pneumoconiosis . . . and (B) Clinical pneumoconiosis . . . or (ii) Establishing that

no part of the miner's respiratory or pulmonary total disability was caused by

pneumoconiosis . . . ."  § 718.305(d)(1) (2013).  The new regulation also retains

the prior version of the regulation's prohibition on rebutting the presumption "on

the basis of evidence demonstrating the existence of a totally disabling obstructive

respiratory or pulmonary disease of unknown origin."  § 718.305(d)(3) (2013).

---

[11]     Regulations Implementing the Byrd Amendments to the Black Lung
Benefits Act: Determining Coal Miners' and Survivors' Entitlement to Benefits,
78 Fed. Reg. 59,102 (Sept. 25, 2013) (to be codified at 20 C.F.R Parts 718 and
725).

The plain language of both versions of § 718.305 applies the 15-year presumption's rebuttal limitations to the Secretary and operators alike. Since the ALJ relied on the regulation and the statute to restrict McElroy to the limited rebuttal methods, he viewed the regulation as extending those limitations to operators. The Board has explained that the regulation imposes the rebuttal limitations on operators. *See, e.g.*, *Spese v. Peabody Coal Co.*, 19 Black Lung Rep. (Juris) 1-47, 1-49, 1-54 (Ben. Rev. Bd. 1995).

The new regulation parallels the old regulation in all relevant respects. It entrenches the erroneous position taken by the Director in *Owens*—that the two methods of rebutting the 15-year presumption listed in the statute are the only two methods possible. As Judge Niemeyer recognized in his concurring opinion in the analogous *Owens* case, the Director's position is simply an attempt to reinterpret a statute definitively interpreted by the Supreme Court in *Usery*. When this fact is acknowledged, neither version of the regulation can be deemed valid. An agency is without power to re-interpret a statute in a way contrary to a court's prior interpretation, at least where the court has viewed the statute as unambiguous and left no room for agency discretion in interpretation. *See Nat'l Cable and Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005). In *Usery*, the Supreme Court held 30 U.S.C. § 921(c)(4) unambiguously applied the 15-year presumption's rebuttal limitations only to the Secretary, and not also to the

54

responsible operator.  *Usery*, 428 U.S. at 35.[12]  The Supreme Court's construction

of the reach of § 921(c)(4)'s rebuttal limitations in *Usery* must govern over the

agency's construction of the statute per the regulation.

The amended version of 20 C.F.R. § 718.305 mirrors the previous version in

that both apply the statute's rebuttal-method limitations to coal mine operators.

Neither version of the regulation is lawful, though, because neither takes into

account the concerns the Supreme Court expressed in *Usery*.  The conclusion that

*Usery*'s interpretation of the rebuttal limitations forecloses the regulation's

contrary interpretation is reinforced by the recent decision in *United States*

*v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836 (2012).  *Home Concrete*

considered whether a statute which extended the statute of limitations on

tax-deficiency actions when a taxpayer "omits from gross income an amount

properly includible therein," applied in situations where the taxpayer overstates his

basis in property he sold and thus understates his gain received.  *Id.* at 1839.  In its

---

[12]    The Supreme Court also took notice that the Secretary of Health, Education, and Welfare issued regulations, as did the Secretary of Labor, authorizing limitations on rebuttal evidence similar to those contained in § 921(c)(4), and applied them in determinations of an operator's liability.  *Usery*, 428 U.S. at 437. As the operators did not challenge the statutory or constitutional validity of these regulations, though, the Court found it inappropriate to consider the constitutional or statutory validity of the regulations.  *Id.*  In a footnote, the Court then said "it follows from our discussion of the § 411(c)(4) limitation on rebuttal that these regulations cannot stand as authoritative administrative interpretations of the statute itself."  *Id.* at 37, n.40.

previous case of *Colony, Inc. v. Comm'r*, 357 U.S. 28 (1958), the Supreme Court
interpreted an earlier version of the statute, one which contained materially
indistinguishable language, as not applying the extended statute of limitations to
basis-overstatement cases. *Id.* at 1840–41. Through a later-enacted regulation, the
Government interpreted the statute opposite to how the Supreme Court interpreted
it in *Colony. Id.* at 1842. The Government contended its view of the statute, as
expressed in its regulation, merited deference under *Chevron U.S.A., Inc.
v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984),[13] and controlled
the case. *Id.* at 1842–43.

The Supreme Court determined its interpretation of the tax statute prevailed
over the Government's conflicting interpretation in the later-enacted regulation.
*Id.* at 1843–44. In doing so, the Court noted that prior judicial interpretations of
statutory language foreclose conflicting agency interpretations where the judicial
interpretations flow from the statute's unambiguous language. *Id.* at 1842 (citing
*Brand X*, 545 U.S. at 982).

---

[13]    In *Chevron*, the Supreme Court set forth a two-step process for reviewing an
agency's construction of a statute it administers. If Congress has directly spoken
to the precise question at issue, and Congress's intent is clear, both the court and
the agency must give effect to the unambiguously expressed intent of Congress.
If, however, the statute is silent or ambiguous with respect to the separate issue, the
court will review whether the agency's action is based on a permissible
construction of the statute (now commonly known as "*Chevron* deference").
*Chevron*, 467 U.S. at 842–43.

56

Analytically, *Home Concrete* parallels Mr. Wnek's case. In both cases:
(1) the Supreme Court held that the statute unambiguously requires one
construction; (2) the relevant language of the statute remains unchanged; and
(3) the agency charged with interpreting the statute issued a regulation purporting
to reinterpret the statute in a way directly contrary to the Supreme Court's
interpretation. The same outcome should occur in both cases.

*Usery*'s conclusion that § 921(c)(4) unambiguously applies the rebuttal
limitations only to the Secretary and not also to operators is binding under *Brand X*
and *Home Concrete*.[14] The DOL cannot reinterpret § 921(c)(4) to extend the
15-year presumption's rebuttal limitations to operators through regulations like
§ 718.305. Only Congress can amend § 921(c)(4) to apply the rebuttal limitations

———————————

[14]    While *Usery* did not use the word "unambiguous" to describe the statute, its
choice of words conveyed the same conclusion: "We need not inquire into the
constitutional questions raised by the District Court, however, because we think it
clear as a matter of statutory construction that the § 411(c)(4) limitation on rebuttal
evidence is inapplicable to operators,"; "and this plain language is fortified by the
legislative history,"; "we have nothing in the statute or in its legislative history to
suggest that an operator is similarly bound because the Secretary of Labor is also
to adjudicate the operator's liability,"; and "in short, we conclude that the Act does
not itself limit the evidence with which an operator may rebut the § 411(c)(4)
presumption." *Usery*, 428 U.S. at 35–37 (emphasis added). The unambiguous
nature of the statute forecloses any contrary interpretation. *See Brand X*, 545 U.S.
at 985. At the very least, the Court's description of the statute reveals Congress
spoke directly to the issue of to whom the rebuttal limitations apply. The statute
thus left no gap for the DOL to fill, meaning §718.305 must give way. *See Home
Concrete*, 132 S. Ct. at 1844.

to operators, and Congress has opted to not do so despite having amended other provisions of the BLBA multiple times since *Usery* was decided. "We have been told many times to leave to the Court the prerogative of overruling its own decisions. If that injunction has been issued to the circuit courts, it assuredly applies to agencies in situations where the Court has interpreted the plain language of a statutory command." *Home Concrete & Supply, LLC v. United States,* 634 F.3d 249, 260 (4th Cir. 2011) (Wilkinson, J., concurring) (internal quotation marks omitted). Since they are contrary to Supreme Court precedent, the provisions of § 718.305 that apply the statute's limited rebuttal methods to operators and that forbid rebuttal "on the basis of evidence demonstrating the existence of a totally disabling obstructive respiratory or pulmonary disease of unknown origin"[15] are not entitled to *Chevron* deference and should be struck down.

---

[15]    In the old version of the regulation, these provisions include the last sentence of § 718.305(a) and all of § 718.305(d); in the new version of the regulation, they include all of § 718.305(d).

## VI.    CONCLUSION

McElroy Coal Company respectfully requests the Board's decision and order affirming the ALJ's award of benefits be vacated and remanded for reconsideration under the BLBA and black lung regulations.

Respectfully submitted,

**McELROY COAL COMPANY,**

By Counsel.

/s/ Jeffrey R. Soukup
Jeffrey R. Soukup
KY Bar No. 92029
Jackson Kelly PLLC
175 E. Main Street
Lexington, KY  40507
(859) 288-2826

## VII.    REQUEST FOR ORAL ARGUMENT

McElroy Coal Company respectfully requests this matter be set for oral argument before a panel of the United States Court of Appeals for the Fourth Circuit.  Oral argument will assist this Court in understanding the full extent of the legal and factual issues and contentions of the parties.  This case presents a question of law important for consideration of claims under the BLBA

## VIII.    ADDENDUM OF STATUTES, RULES, and REGULATIONS

Patient Protection and Affordable Care Act, Pub. L. No. 111-148, § 1556 (March 23, 2010):

EQUITY FOR CERTAIN ELIGIBLE SURVIVORS.

(a) REBUTTABLE PRESUMPTION.—Section 411(c)(4) of the Black Lung Benefits Act (30 U.S.C. 921(c)(4)) is amended by striking the last sentence.

(b) CONTINUATION OF BENEFITS.—Section 422(l) of the Black Lung Benefits Act (30 U.S.C. 932(l)) is amended by striking '', except with respect to a claim filed under this part on or after the effective date of the Black Lung Benefits Amendments of 1981''.

(c) EFFECTIVE DATE.—The amendments made by this section shall apply with respect to claims filed under part B or part C of the Black Lung Benefits Act (30 U.S.C. 921 et seq., 931 et seq.) after January 1, 2005, that are pending on or after the date of enactment of this Act.

30 U.S.C. § 921(c)(4):

Regulations and presumptions

(c) Presumptions

    For purposes of this section—

(1) If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines there shall be a rebuttable presumption that his pneumoconiosis arose out of such employment.

(2) If a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease there shall be a rebuttable presumption that his death was due to pneumoconiosis. The provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981.

(3) If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconiosis by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis, as the case may be.

(4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

(5) In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits, at the rate applicable under section 922(a)(2) of this title, unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis. Eligible survivors shall, upon

request by the Secretary, furnish such evidence as is available with respect to the health of the miner at the time of his or her death. The provisions of this paragraph shall not apply with respect to claims filed on or after the day that is 180 days after the effective date of the Black Lung Benefits Amendments of 1981.

20 C.F.R. § 718.202 (2000):

(a) A finding of the existence of pneumoconiosis may be made as follows:

(1) A chest X-ray conducted and classified in accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis. Except as otherwise provided in this section, where two or more X-ray reports are in conflict, in evaluating such X-ray reports consideration shall be given to the radiological qualifications of the physicians interpreting such X-rays.

(i) In all claims filed before January 1, 1982, where there is other evidence of pulmonary or respiratory impairment, a Board-certified or Board-eligible radiologist's interpretation of a chest X-ray shall be accepted by the Office if the X-ray is in compliance with the requirements of § 718.102 and if such X-ray has been taken by a radiologist or qualified radiologic technologist or technician and there is no evidence that the claim has been fraudulently represented. However, these limitations shall not apply to any claim filed on or after January 1, 1982.

(ii) The following definitions shall apply when making a finding in accordance with this paragraph.

(A) The term other evidence means medical tests such as blood-gas studies, pulmonary function studies or physical examinations or medical histories which establish the presence of a chronic pulmonary, respiratory or cardio-pulmonary condition, and in the case of a deceased miner, in the absence of medical evidence to the contrary, affidavits of persons with knowledge of the miner's physical condition.

(B) Pulmonary or respiratory impairment means inability of the human respiratory apparatus to perform in a normal manner one or more of the three components of respiration, namely, ventilation, perfusion and diffusion.

63

(C) Board-certified means certification in radiology or diagnostic roentgenology by the American Board of Radiology, Inc. or the American Osteopathic Association.

(D) Board-eligible means the successful completion of a formal accredited residency program in radiology or diagnostic roentgenology.

(E) Certified 'B' reader or 'B' reader means a physician who has demonstrated proficiency in evaluating chest roentgenograms for roentgenographic quality and in the use of the ILO–U/C classification for interpreting chest roentgenograms for pneumoconiosis and other diseases by taking and passing a specially designed proficiency examination given on behalf of or by the Appalachian Laboratory for Occupational Safety and Health. See 42 CFR 37.51(b)(2).

(F) Qualified radiologic technologist or technician means an individual who is either certified as a registered technologist by the American Registry of Radiologic Technologists or licensed as a radiologic technologist by a state licensing board.

(2) A biopsy or autopsy conducted and reported in compliance with § 718.106 may be the basis for a finding of the existence of pneumoconiosis. A finding in an autopsy or biopsy of anthracotic pigmentation, however, shall not be sufficient, by itself, to establish the existence of pneumoconiosis. A report of autopsy shall be accepted unless there is evidence that the report is not accurate or that the claim has been fraudulently represented.

(3) If the presumptions described in § 718.304 or § 718.305 are applicable, it must be presumed that the miner is or was suffering from pneumoconiosis.

(4) A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.

(b) No claim for benefits shall be denied solely on the basis of a negative chest X-ray.

(c) A determination of the existence of pneumoconiosis shall not be made solely on the basis of a living miner's statements or testimony. Nor shall such a determination be made upon a claim involving a deceased miner filed on or after January 1, 1982, solely based upon the affidavit(s) (or equivalent sworn testimony) of the claimant and/or his or her dependents who would be eligible for augmentation of the claimant's benefits if the claim were approved.

20 C.F.R. § 718.204 (2013):

(a) General. Benefits are provided under the Act for or on behalf of miners who are totally disabled due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of death. For purposes of this section, any nonpulmonary or nonrespiratory condition or disease, which causes an independent disability unrelated to the miner's pulmonary or respiratory disability, shall not be considered in determining whether a miner is totally disabled due to pneumoconiosis. If, however, a nonpulmonary or nonrespiratory condition or disease causes a chronic respiratory or pulmonary impairment, that condition or disease shall be considered in determining whether the miner is or was totally disabled due to pneumoconiosis.

(b)(1) Total disability defined. A miner shall be considered totally disabled if the irrebuttable presumption described in § 718.304 applies. If that presumption does not apply, a miner shall be considered totally disabled if the miner has a pulmonary or respiratory impairment which, standing alone, prevents or prevented the miner:

> (i) From performing his or her usual coal mine work; and

> (ii) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time.

(2) Medical criteria. In the absence of contrary probative evidence, evidence which meets the standards of either paragraphs (b)(2)(i), (ii), (iii), or (iv) of this section shall establish a miner's total disability:

(i) Pulmonary function tests showing values equal to or less than those listed in Table B1 (Males) or Table B2 (Females) in Appendix B to this part for an individual of the miner's age, sex, and height for the $FEV_1$ test; if, in addition, such tests also reveal the values specified in either paragraph (b)(2)(i)(A) or (B) or (C) of this section:

   (A) Values equal to or less than those listed in Table B3 (Males) or Table B4 (Females) in Appendix B of this part, for an individual of the miner's age, sex, and height for the FVC test, or

   (B) Values equal to or less than those listed in Table B5 (Males) or Table B6 (Females) in Appendix B to this part, for an individual of the miner's age, sex, and height for the MVV test, or

   (C) A percentage of 55 or less when the results of the $FEV_1$ test are divided by the results of the FVC test ($FEV_1$/FVC equal to or less than 55%), or

(ii) Arterial blood-gas tests show the values listed in Appendix C to this part, or

(iii) The miner has pneumoconiosis and has been shown by the medical evidence to be suffering from cor pulmonale with right-sided congestive heart failure, or

(iv) Where total disability cannot be shown under paragraphs (b)(2)(i), (ii), or (iii) of this section, or where pulmonary function tests and/or blood gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b)(1) of this section.

(c)(1) Total disability due to pneumoconiosis defined. A miner shall be considered totally disabled due to pneumoconiosis if pneumoconiosis, as defined in § 718.201, is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment. Pneumoconiosis is a "substantially contributing cause" of the miner's disability if it:

66

(i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or

(ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.

(2) Except as provided in § 718.305 and paragraph (b)(2)(iii) of this section, proof that the miner suffers or suffered from a totally disabling respiratory or pulmonary impairment as defined in paragraphs (b)(2)(i), (b)(2)(ii), (b)(2)(iv) and (d) of this section shall not, by itself, be sufficient to establish that the miner's impairment is or was due to pneumoconiosis. Except as provided in paragraph (d), the cause or causes of a miner's total disability shall be established by means of a physician's documented and reasoned medical report.

(d) Lay evidence. In establishing total disability, lay evidence may be used in the following cases:

(1) In a case involving a deceased miner in which the claim was filed prior to January 1, 1982, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition shall be sufficient to establish total (or under § 718.306 partial) disability due to pneumoconiosis if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition.

(2) In a case involving a survivor's claim filed on or after January 1, 1982, but prior to June 30, 1982, which is subject to § 718.306, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition shall be sufficient to establish total or partial disability due to pneumoconiosis if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition; however, such a determination shall not be based solely upon the affidavits or testimony of the claimant and/or his or her dependents who would be eligible for augmentation of the claimant's benefits if the claim were approved.

(3) In a case involving a deceased miner whose claim was filed on or after January 1, 1982, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition shall be sufficient to establish total disability due to pneumoconiosis if no medical or other

67

relevant evidence exists which addresses the miner's pulmonary or respiratory condition; however, such a determination shall not be based solely upon the affidavits or testimony of any person who would be eligible for benefits (including augmented benefits) if the claim were approved.

(4) Statements made before death by a deceased miner about his or her physical condition are relevant and shall be considered in making a determination as to whether the miner was totally disabled at the time of death.

(5) In the case of a living miner's claim, a finding of total disability due to pneumoconiosis shall not be made solely on the miner's statements or testimony.

(e) In determining total disability to perform usual coal mine work, the following shall apply in evaluating the miner's employment activities:

(1) In the case of a deceased miner, employment in a mine at the time of death shall not be conclusive evidence that the miner was not totally disabled. To disprove total disability, it must be shown that at the time the miner died, there were no changed circumstances of employment indicative of his or her reduced ability to perform his or her usual coal mine work.

(2) In the case of a living miner, proof of current employment in a coal mine shall not be conclusive evidence that the miner is not totally disabled unless it can be shown that there are no changed circumstances of employment indicative of his or her reduced ability to perform his or her usual coal mine work.

(3) Changed circumstances of employment indicative of a miner's reduced ability to perform his or her usual coal mine work may include but are not limited to:

(i) The miner's reduced ability to perform his or her customary duties without help; or

(ii) The miner's reduced ability to perform his or her customary duties at his or her usual levels of rapidity, continuity or efficiency; or

(iii) The miner's transfer by request or assignment to less vigorous duties

or to duties in a less dusty part of the mine.

20 C.F.R. § 718.305 (2000):

(a) If a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest X-ray submitted in connection with such miner's or his or her survivor's claim and it is interpreted as negative with respect to the requirements of § 718.304, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that such miner's death was due to pneumoconiosis, or that at the time of death such miner was totally disabled by pneumoconiosis. In the case of a living miner's claim, a spouse's affidavit or testimony may not be used by itself to establish the applicability of the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where it is determined that conditions of the miner's employment in a coal mine were substantially similar to conditions in an underground mine. The presumption may be rebutted only by establishing that the miner does not, or did not have pneumoconiosis, or that his or her respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

(b) In the case of a deceased miner, where there is no medical or other relevant evidence, affidavits of persons having knowledge of the miner's condition shall be considered to be sufficient to establish the existence of a totally disabling respiratory or pulmonary impairment for purposes of this section.

(c) The determination of the existence of a totally disabling respiratory or pulmonary impairment, for purposes of applying the presumption described in this section, shall be made in accordance with § 718.204.

(d) Where the cause of death or total disability did not arise in whole or in part out of dust exposure in the miner's coal mine employment or the evidence establishes that the miner does not or did not have pneumoconiosis, the presumption will be considered rebutted. However, in no case shall the presumption be considered rebutted on the basis of evidence demonstrating the existence of a totally disabling obstructive respiratory or pulmonary disease of unknown origin.

69

(e) This section is not applicable to any claim filed on or after January 1, 1982.

20 C.F.R. § 718.305 (2013):

(a) Applicability. This section applies to all claims filed after January 1, 2005, and pending on or after March 23, 2010.

(b) Invocation.

(1) The claimant may invoke the presumption by establishing that—

(i) The miner engaged in coal-mine employment for fifteen years, either in one or more underground coal mines, or in coal mines other than underground mines in conditions substantially similar to those in underground mines, or in any combination thereof; and

(ii) The miner or survivor cannot establish entitlement under § 718.304 by means of chest x-ray evidence; and

(iii) The miner has, or had at the time of his death, a totally disabling respiratory or pulmonary impairment established pursuant to § 718.204, except that § 718.204(d) does not apply.

(2) The conditions in a mine other than an underground mine will be considered "substantially similar" to those in an underground mine if the claimant demonstrates that the miner was regularly exposed to coal-mine dust while working there.

(3) In a claim involving a living miner, a miner's affidavit or testimony, or a spouse's affidavit or testimony, may not be used by itself to establish the existence of a totally disabling respiratory or pulmonary impairment.

(4) In the case of a deceased miner, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition must be considered sufficient to establish total disability due to a respiratory or pulmonary impairment if no medical or other

70

relevant evidence exists which addresses the miner's pulmonary or respiratory condition; however, such a determination must not be based solely upon the affidavits or testimony of any person who would be eligible for benefits (including augmented benefits) if the claim were approved.

(c) Facts presumed. Once invoked, there will be rebuttable presumption—

(1) In a miner's claim, that the miner is totally disabled due to pneumoconiosis, or was totally disabled due to pneumoconiosis at the time of death; or

(2) In a survivor's claim, that the miner's death was due to pneumoconiosis.

(d) Rebuttal—

(1) Miner's claim. In a claim filed by a miner, the party opposing entitlement may rebut the presumption by—

(i) Establishing both that the miner does not, or did not, have:

(A) Legal pneumoconiosis as defined in § 718.201(a)(2); and

(B) Clinical pneumoconiosis as defined in § 718.201(a)(1), arising out of coal mine employment (see § 718.203); or

(ii) Establishing that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis as defined in § 718.201.

(2) Survivor's claim. In a claim filed by a survivor, the party opposing entitlement may rebut the presumption by—

(i) Establishing both that the miner did not have:

(A) Legal pneumoconiosis as defined in § 718.201(a)(2); and

71

(B) Clinical pneumoconiosis as defined in § 718.201(a)(1), arising out of coal mine employment (see § 718.203); or

(ii) Establishing that no part of the miner's death was caused by pneumoconiosis as defined in § 718.201.

(3) The presumption must not be considered rebutted on the basis of evidence demonstrating the existence of a totally disabling obstructive respiratory or pulmonary disease of unknown origin.

## IX.   ADDENDUM OF UNPUBLISHED CASES

*Consolidation Coal Co. v. Swiger*
        98 F. App'x 227, 238 (4th Cir. 2004)

*Freeman v. R&F Coal Co.*,
        2007-BLA-5958 (OALJ Jan. 2, 2013)

*R.S. v. Director, OWCP*,
        2005-BLA-6014 (OALJ May 11, 2007)

*Bernardi v. McElroy Coal Co.*,
        2008-BLA-05557 (OALJ Aug. 31, 2011)

## X.    CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitations,
Typeface Requirements, and Type-Style Requirements

No.14-1251        Caption:  McElroy Coal Company v. Donn L. Wnek

1.    This brief complies with the type-volume limitation of Fed.R.App.P. 32(a)(7)(B) because:

this brief contains **13,882** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

this brief has been prepared in a proportionally spaced typeface using Microsoft Word  2010 Version in Times New Roman 14 point font.


/s/ Jeffrey R. Soukup
*Counsel for McElroy Coal Company*

Dated: May 14, 2014

## XI.   CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the **Opening Brief of**

**Petitioner, McElroy Coal Company,** was served upon the following by electronic

delivery and UPS Ground this **14th** day of May, 2014.

**ELECTRONIC &**       Patricia S. Connor, Clerk of Court
**UPS GROUND:**        United States Court of Appeals for the Fourth Circuit
                       Lewis F. Powell, Jr. United States Courthouse Annex
                       1100 E. Main Street, Suite 501
                       Richmond, VA  23219-3517


**ELECTRONIC:**        Heath M. Long, Esquire
                       Pawlowski, Bilonick & Long
                       603 North Julian Street
                       P. O. Box 658
                       Ebensburg, PA  15931-0658

                       Gary K. Stearman, Esquire
                       U. S. Department of Labor
                       Office of the Solicitor
                       Frances Perkins Building, Suite N-2117
                       200 Constitution Avenue, N.W.
                       Washington, DC  20210



                                    /s/ Jeffrey R. Soukup
                                    *Counsel for McElroy Coal Company*